```
            IN THE UNITED STATES DISTRICT COURT
          FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
                       WESTERN DIVISION
```

JASON THOMAS KERR                              APPELLANT / DEFENDANT

VS.                            CRIMINAL NO. 5:13-cr-6(DCB)(FKB)

UNITED STATES OF AMERICA                         APPELLEE / PLAINTIFF

                    MEMORANDUM OPINION AND ORDER

     This is an appeal (docket entry 44) in a criminal case from a Judgment of United States Magistrate Judge F. Keith Ball (docket entry 41).  This Court has jurisdiction over the appeal pursuant to Federal Rule of Criminal Procedure ("Fed.R.Crim.P.") 58(g)(2)(B), and 18 U.S.C. § 3402.  Kerr appeals from his sentence imposed by the Magistrate Judge following his conviction of one count of a multi-count Information.

     Kerr was charged in two misdemeanor counts of the multi-count Information.  He was charged, in Count 2, with conspiring to violate daily reporting requirements of hunting activity occurring on the Delta National Forest ("DNF") and, in Count 23, with failing to case properly a shoulder-fired firearm while traveling on property within the DNF.  At trial, Magistrate Judge Ball found Kerr guilty of Conspiracy as charged in Count 2, and not guilty of the offense charged in Count 23.  He sentenced Kerr to a fine of $500, a special assessment of $10, and one year of non-reporting probation.  As special conditions of Kerr's probation, Magistrate Judge Ball imposed (1) a ban from any federal national forest or

federal wildlife refuge for a period of two years, and (2) a prohibition from hunting for one year.  Kerr appeals only from the hunting prohibition.

Kerr's conviction arose from an investigation into activities occurring on the DNF, which is managed by the Mississippi Department of Wildlife, Fisheries and Parks ("MDWFP") as the Sunflower Wildlife Management Area ("Sunflower WMA").  Kerr was employed by MDWFP as a conservation officer assigned as the Area Manager for the Sunflower WMA.  ("Trial Transcript" (hereinafter "TT"), p. 9).  The Sunflower WMA is comprised of the DNF, a federally-owned vast tract of land in Sharkey County, Mississippi, available for recreational and hunting use by the general public. (TT, pp. 7-9, 32).

Kerr's responsibility as the Area Manager was to enforce the rules and regulations of hunters on the Sunflower WMA.  (TT, p. 9; Exhibit G-1).[1]  One of those rules requires users of the Sunflower WMA to complete daily use visitor cards and to deposit them in drop boxes upon exiting the DNF.  (TT, p. 46; Exhibit G-1).  A daily use visitor card consists of two parts: Part A is to be completed by the hunter and placed in the drop box near the kiosk from which he obtained his card; part B is to be placed on the dashboard of the

---

[1] "Exhibit G-1" refers to a government trial exhibit, a recording of a conversation between Agent Cooper Chavis of the United States Fish and Wildlife Service and appellant Kerr. (See TT, pp. 10-11).

hunter's vehicle until he exits the DNF, at which time he is to complete the card with requested information (such as the date and time of the hunt, the location, and the game taken, heard or seen) and place it in one of the drop boxes located along the exit routes of the Sunflower WMA.

These cards, when completed by the hunter, reveal a wealth of information used by federal authorities and biologists for statistical and biological purposes.  (TT, pp. 38-42, 52, 60, 65). Kerr's responsibilities as Area Manager included retrieving these cards from the drop boxes and entering them into a database for use in federal funding and wildlife management.  He was also responsible for ticketing users who failed to comply with the regulation.  (Exhibit G-1).

Agents of the United States Fish and Wildlife Service ("USFWS"), in conjunction with MDWFP, conducted an investigation of illegal hunting activities by Kerr's co-defendant, Darryl Dew.  Dew was a MDWFP conservation officer who was believed by agents to have broken numerous wildlife laws and regulations, including the harvest of more turkeys than the State of Mississippi allowed. Special Agent Cooper Chavis of USFWS observed Dew from a hidden spot and saw him take a turkey while hunting the DNF.  After hearing him shoot, Agent Chavis saw Dew walk out of the woods to his truck with a turkey which he then began to measure.  Agent Chavis then saw Dew fumble through several daily use visitor cards.

(TT, pp. 12-13).

Subsequently, while Dew was attending in-service training in Canton, Mississippi, agents entered his state-issued truck and took photographs of daily use visitor cards still in his truck.  None had been deposited in any drop box as required.  (TT, p. 51).

Two days later, Agent Chavis saw Dew and Kerr talking beside a road in the DNF.  Dew was dressed in camouflage, wearing a turkey vest, and carrying a shotgun.  (TT, p. 22).  Kerr explained later in an interview (Exhibit G-1) that he knew at the time that Dew had, at a minimum, killed his limit of turkeys.  Kerr's only explanation of why he did not give Dew a ticket for hunting turkeys after he had taken his limit was that Dew told him he was only "scouting" turkeys and that there was nothing illegal in that.  (Exhibit G-1).

Conservation Officer Jason Redden then went to Kerr's residence to speak with him.  Although Kerr was not present, his state-issued truck was, and Redden found Dew's daily use visitor cards in the center console of Kerr's truck.  (TT, pp. 53-54, Exhibit G-3).[2]  Kerr explained in his interview (Exhibit G-1) that he received the cards from Dew.  He could not explain, however, why he did not give Dew a ticket for failing to deposit the cards daily

---

[2] "Exhibit G-3" refers to a composite government exhibit, a plastic ziplock bag containing the daily use visitor cards retrieved from Kerr's vehicle.  (See TT, p. 54).

as required.  When confronted with the fact that he gave others tickets for failing to deposit daily use visitor cards, Kerr could offer no explanation for his failure to ticket Dew for the same offense.  (Exhibit G-1).

Magistrate Judge Ball found Kerr guilty of conspiring with Dew to violate the rules and regulations of the Sunflower WMA, and sentenced him as follows: a fine of $500, an assessment of $10, and one year of non-reporting probation with the following conditions: (1) that he be banned from any federal national forest or federal wildlife refuge for two years, and (2) that he be prohibited from hunting for one year.  The second condition is the sole issue on appeal.

Rule 58 of the Federal Rules of Criminal Procedure, which pertains to proceedings involving petty offenses and misdemeanors, specifically provides that "[t]he Federal Rules of Appellate Procedure govern an appeal from a district judge's order or a judgment of conviction or sentence."  Fed.R.Crim.P 58(g)(1).  The Advisory Committee's Note states that "subdivision (g)(1) was added to make clear that the Federal Rules of Appellate Procedure govern any appeal in a case tried by a district judge pursuant to this new rule." Fed.R.Crim.P. 58 advisory committee's note (1990).  This is consistent with the general appellate scheme of Rule 58, in which the district court functions as a court of review rather than a trial court.  See also Fed.R.Crim.P. 58(g)(2)(D) ("The defendant is

not entitled to a trial de novo by a district judge. The scope of the appeal is the same as in an appeal to the court of appeals from a judgment entered by a district judge.").

"[A] defendant's failure to object at sentencing to the reasonableness of his sentence" triggers plain error review. <u>United States v. Peltier</u>, 505 F.3d 389, 391-92 (5th Cir. 2007). Kerr did not object to the hunting restriction at his sentencing. Alternatively, even if the defendant does object to a special condition on his supervised release, the standard of review is "abuse of discretion." <u>See</u> <u>United States v. Merritt</u>, 639 F.2d 254, 256 (5th Cir. 1981)(citing <u>United States v. McLeod</u>, 608 F.2d 1076, 1078 (5th Cir. 1979)).[3] The Court "may not consider new evidence furnished for the first time on appeal and may not consider facts which were not before the [trial] court at the time of the challenged ruling." <u>Theriot v. Parish of Jefferson</u>, 185 F.3d 477, 491 n.26 (5th Cir. 1999).

Pursuant to 18 U.S.C. § 3742, "a defendant may file a notice of appeal in the district court for review of an otherwise final sentence if the sentence ... was imposed for an offense for which

---

[3] Title 18 U.S.C. § 3563(b) permits discretionary conditions: "The court may provide, as further conditions of a sentence of probation, to the extent that such conditions are reasonably related to the factors set forth in section 3553(a)1) and (a)(2) and to the extent that such conditions involve only such deprivations of liberty or property as are reasonably necessary for the purposes indicated in section 3553(a)(2), that the defendant ... (22) satisfy such other conditions as the court may impose ...."

there is no sentencing guideline and is plainly unreasonable." 18 U.S.C. § 3742(a)(4).  Kerr was found guilty of a Class B misdemeanor, punishable by a term of imprisonment not exceeding six months.  The United States Sentencing Guidelines therefore do not apply to his offense.  See U.S.S.G. § 1B1.9 ("The sentencing guidelines do not apply to any count of conviction that is a Class B or C misdemeanor or an infraction.").  See also 36 Code of Federal Regulations § 261.8(a); Miss. Code Ann. § 49-5-13; Miss. Public Notice PN #W 3812.[4]

The appellant contends that the Magistrate Judge abused his discretion in revoking Kerr's hunting privileges for one year, because the prohibition is not reasonably related to the factors set forth in 18 U.S.C. § 3553(a)(1) and (a)(2).  The appellee contends, to the contrary, that the prohibition is reasonably related to the § 3553(a)(1) and (a)(2) factors.

Exercising its discretion, the trial court may impose conditions on probation "to the extent that such conditions ... are reasonably necessary for the purposes indicated in section 3553(a)(2).  Section 3553(a)(2)(A)-(D) sets forth four categories to be considered when imposing sentences.  The categories are: (1) the need to reflect the seriousness of the offense, to promote

---

[4] In the federal system, virtually every petty offense that can be committed on federal land is punishable as a misdemeanor. See 36 C.F.R. § 261.1 (punishing a variety of petty offenses on National Forest land as Class B misdemeanors).

respect for the law, and to provide just punishment; (2) the need to afford adequate deterrence; (3) the need to protect the public from further crimes by the defendant; and (4) the need to provide the defendant with educational or vocational training, medical care, or other correctional services in the most effective manner.

The trial court "need not engage in ritualistic incantation in order to establish its consideration of [the § 3553(a)(2)(A)-(D) factors]. It is sufficient if ... [the Magistrate Judge] rules on issues that have been fully presented for determination. Consideration is implicit in the court's ultimate ruling." United States v. Davis, 53 F.3d 638, 642 (4th Cir. 1995). Furthermore, "determining whether a ... sentence is unreasonable 'entails a deferential appellate posture concerning issues of fact and the exercise of discretion.'" United States v. Crudup, 461 F.3d 433, 439 (4th Cir. 2006), cert. denied, 127 S.Ct. 1813 (2007)(quoting United States v. Salinas, 365 F.3d 582, 588 (7th Cir. 2004)(other citations omitted)).

Kerr argues that the hunting ban was inappropriate because his conviction had nothing to do with his own personal hunting, and that none of the § 3553 factors were served by the condition the Magistrate Judge imposed. However, "if a challenged condition is intended to advance one of the goals of supervised release, [the condition] is not overbroad simply because there is no offense-specific nexus." United States v. Perazza-Mercado, 553 F.3d 65, 70

(1st Cir. 2009).  "[T]he critical test is not whether such an offense-specific nexus exists, but rather, whether the challenged condition is sufficiently related to one or more of the permissible goals of supervised release."  United States v. Smith, 436 F.3d 307, 311 (1st Cir. 2006)(quoting United States v. Brown, 235 F.3d 2, 6 (1st Cir. 2000)(internal quotation marks omitted)).

While Kerr's offense may not have constituted a hunting violation per se, it did have an impact on hunting.  Forest Service regulations reflect the national policy to care for and protect national forest land.  The daily use visitor cards are used by both federal and state agencies to monitor activities and to compile data useful in wildlife management, ultimately for the benefit of hunters.  Furthermore, Kerr was a law enforcement officer.  Officers function under the public trust, and are held to a higher standard than the ordinary citizen since their actions reflect on law enforcement and our system of justice.  Hunting is a highly-regulated activity, and requires diligent enforcement efforts by those entrusted to ensure the safety and well-being of both hunters and wildlife.

It is clear that the hunting restriction imposed as a condition of Kerr's probation was fair and neither "plainly unreasonable" nor an abuse of discretion.  The condition was reasonably related to the nature and circumstances of the offense and the need to afford adequate deterrence to criminal conduct.  In

addition, it was consistent with community service requirements and served a legitimate punishment need.  Finally, the condition did not involve a greater deprivation of liberty than reasonably necessary to achieve the statutory goals.  See United States v. Paul, 274 F.3d 155, 165 (5th Cir. 2001).

Accordingly,

IT IS HEREBY ORDERED that the defendant Jason Thomas Kerr's appeal (docket entry 44) is DENIED, and the Magistrate Judge's decision (docket entry 41) is AFFIRMED.

SO ORDERED, this the 23rd day of December, 2014.

/s/ David Bramlette
UNITED STATES DISTRICT JUDGE